

Russell Greer
c/o A Safer Nevada PAC
10409 Pacific Palisades Ave
Las Vegas, NV 89144
contact@asafernevada.org
801-895-3501
Pro Se Litigant
L

# IN THE U.S. DISTRICT COURT

# OF NEVADA

| | |
|---|---|
| **RUSSELL GREER,** an individual,<br><br>  Plaintiff<br><br>v.<br><br>**FRANCISCO V. AGUILAR,** in his official capacity as the Secretary of State of Nevada,<br><br>  Defendant | **PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF**<br><br><br>Case No.:  2:25-cv-02581-RFB-BNW<br><br><br>District Judge: Richard F Boulware, II<br><br>Magistrate Judge: Brenda Weksler |

## INTRODUCTION

1. This action challenges Nevada's arbitrary and burdensome requirement that five qualified electors of a city or county sponsor a local ballot initiative petition before circulation may begin, whereas only one person may initiate a statewide petition. This disparate treatment violates the First and Fourteenth Amendments to the U.S. Constitution and Article 19 of the Nevada Constitution.

2. This action presents an as-applied constitutional challenge to the sponsor-threshold provisions of NRS 295.095(1) and NRS 295.205(1).

3. Plaintiff does not challenge the remaining procedural requirements governing initiative petitions, but seeks declaratory and injunctive relief limited to the five-person requirement as applied to the initiation of county and city initiative petitions.

4. Plaintiff respectfully requests *expedited resolution of this matter by early March 2026*, so that signature gathering may begin in spring 2026, to qualify for the November 2026 general election ballot.

## JURISDICTION AND VENUE

5 . This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.5.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events at issue occurred in Nevada.

## PARTIES

8. Plaintiff Russell Greer is a Nevada resident and the founder of A Safer Nevada PAC. The PAC's goals are to expand prostitution legality throughout Nevada through ballot initiative.

9. Defendant Francisco Aguilar is the Secretary of State of Nevada and, in his official capacity, is charged with administering, supervising, and enforcing Nevada's initiative petition statutes.

10. Defendant is sued in his official capacity for prospective declaratory and injunctive relief only.

## FACTUAL BACKGROUND

11. Article 19 of the Nevada Constitution reserves the initiative power to the People and is self-executing.

12. NRS 295.015(1) permits, at a minimum, a single sponsor to initiate a statewide ballot measure.

13. On the other hand, NRS 295.095(1) and NRS 295.205(1) require five qualified local electors to circulate and sponsor a city or county petition before circulation can commence.

14. In 2022 and 2024, Plaintiff attempted to initiate a local petition in a small incorporated city in Nevada to legalize brothels, but was barred from doing so, due to the five-sponsor requirement imposed by NRS 295.205(1). Plaintiff is attempting again in 2026 to do the initiative, but again faces the 5 person requirement hurdle.

15. The 5 person requirement is particularly burdensome for controversial or sensitive measures, like Plaintiff's brothel initiative, as local residents are often unwilling to serve as public sponsors. In fact, in 2024, Plaintiff found one local voter, who was supposed to find four other voters to circulate the petition, but then she withdrew, collapsing the entire initiative.

16. The befuddlement is stark: Plaintiff could file the same initiative at the statewide level with only his own signature, but a county or city initiative requires 5 registered voters, who live in that jurisdiction.

17. Potential supporters in the aforementioned small city feared public shunning and gossip if they openly signed as part of the petitioners' sponsor committee.

18. This chilling effect has repeatedly prevented Plaintiff from initiating petitions, in both 2022 and 2024, and now with that same effect looming in 2026, despite genuine local interest in allowing the voters themselves to decide the question of brothels.

19. Plaintiff approached said municipality's City Council and asked if the question could be placed before the voters in the form of an advisory question with no binding effect, but the Mayor refused to allow even an advisory action to proceed. This refusal underscores the extent to which the-five-local-elector requirement effectively forecloses any opportunity for voters to even express their views on the matter.

20. Plaintiff also intends in 2026 to initiate a countywide "trigger law" petition in Clark County, Nevada. Plaintiff is chilled from doing so because of the statutory requirement that five county electors serve as official sponsors.

21. As seen in the small city, residents likewise in Clark County are equally reluctant to attach their names to controversial proposals for fear of reputational consequences or social retaliation.

22. As a registered Nevada voter, Plaintiff should be able to initiate, sponsor and circulate local petitions in any county or city within the state, regardless of whether he lives in that jurisdiction, as long as registered voter residents sign the petition, which the clerks can verify.

23. NRS 295.095(1) and 295.205(1), however, arbitrarily require five electors from the specific jurisdiction, effectively preventing Plaintiff from initiating measures in communities where local residents may be unwilling to attach their names due to social or political pressure.

24. Further, Plaintiff has found that the five-sponsor requirement is confusing to many residents, which discourages participation and further burdens the exercise of the initiative right, as residents often misunderstand why separate signatures are required for circulation authorization and for the petition itself.

25. Plaintiff does not contend that non-Nevada residents must be permitted to sponsor petitions; rather, he asserts that Nevada residents may not be divided into "local" and "non-local" classes, based solely on residency within a particular city or county for purposes of exercising the initiative right to circulate a petition.

## CLAIMS FOR RELIEF

### Count I – Equal Protection (U.S. Const. amend. XIV)

26. Plaintiff incorporates by reference paragraphs 1–25.

27. The Equal Protection Clause requires that similarly situated individuals be treated alike, unless the State can show that differential treatment is narrowly tailored to a compelling governmental interest. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

28. Nevada law arbitrarily distinguishes between two identical forms of direct democracy: statewide initiatives and local initiatives. A single elector may sponsor a statewide petition under NRS 295.015(1), but at least five *local* electors are required to sponsor a city or county petition under NRS 295.095(1) and NRS 295.205(1).

29. There is no constitutional or practical distinction that justifies treating statewide and local initiative sponsors differently. Both processes invoke the same fundamental right reserved to Nevada citizens under Article 19, yet the burdens imposed on the local process are substantially heavier.

30. These statutes further discriminate among Nevada electors by conditioning the ability to sponsor a petition on residency *within the particular city or county*, even though the elector is fully qualified to sign, vote on, or sponsor statewide measures. Thus, a Nevada resident may lawfully be the sole sponsor of a statewide constitutional amendment, but is categorically prohibited from sponsoring a local measure, unless he (a) lives in that specific locality and (b) recruits four additional local electors willing to publicly affiliate with the measure.

31. This residency-based burden falls hardest on initiatives involving subject matter that is stigmatized or controversial—such as brothel regulation, abortion access, or other socially "sensitive" topics—where community members privately support reform, but are unwilling to attach their names publicly for fear of reputational retaliation, harassment, or social

consequences. The result is a *dramatic shrinking* of the pool of individuals able or willing to serve as sponsors.

32. By allowing a single Nevada elector to initiate statewide lawmaking, while denying that same elector the ability to initiate local lawmaking solely on the basis of city/county boundaries, Nevada has drawn an irrational and invidious classification among equally situated electors. This classification burdens a fundamental political right and therefore demands strict scrutiny.

33. The Ninth Circuit has made clear that States may not adopt classifications that unjustifiably circumscribe political participation. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966). In *Chula Vista,* the court upheld the elector requirement **specifically in the context of preventing corporations and artificial entities** from controlling local initiatives. 782 F.3d 520 (9th Cir. 2015). But the Ninth Circuit emphasized that *natural persons*—qualified electors—represent a fundamentally different category, and that restrictions designed to keep out non-electors do not justify burdening citizens who are already qualified Nevada electors.

34. Unlike the corporate-control concerns in Chula Vista, Nevada's five-person local sponsor rule burdens only *natural persons* and offers no comparable justification.

35. Courts across the country have repeatedly held that residency-based and threshold restrictions on initiative participation severely burden political rights and trigger strict scrutiny. See Buckley v. Am. Constitutional Law Found., Inc., 525 U.S. 182, 197–99 (1999); *Nader v. Brewer*, 531 F.3d 1028, 1035–39 (9th Cir. 2008) (striking Arizona's residency requirement because it severely limited the pool of eligible circulators and thus the "quantum of political speech"); *Chandler v. City of Arvada*, 292 F.3d 1236, 1241–44 (10th Cir. 2002) (holding city residency requirements unconstitutional because they significantly restrict political participation and are not narrowly tailored).

36. Nevada cannot demonstrate a compelling interest for requiring *five* local sponsors to initiate a local petition while allowing *one* sponsor to initiate a statewide petition. The State's probable

asserted interests—fraud prevention, administrative clarity, or ensuring local accountability—are already fully addressed by existing measures: sworn circulator affidavits, signature verification, criminal penalties for fraud, and the fact that only *local voters* can ultimately approve the measure anyway.

37. Because NRS 295.095(1) and NRS 295.205(1) impose a severe burden on a fundamental political right, discriminate among Nevada electors without adequate justification, and are not narrowly tailored to any compelling interest, they violate the Equal Protection Clause of the Fourteenth Amendment.

38. Plaintiff seeks declaratory and injunctive relief holding that the five-sponsor and local-residency requirements for initiating local initiatives are unconstitutional as applied to Nevada electors.

### Count II – First Amendment (U.S. Const. amend. I)

39. Plaintiff incorporates by reference paragraphs 1–38.

40. Sponsoring and circulating initiative petitions constitute "core political speech" protected by the First Amendment. Such participation lies at the heart of democratic self-governance. *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988).

41. When a citizen attempts to place an issue before voters through the initiative process, he engages in the precise type of "interactive communication concerning political change" that the Supreme Court has deemed "at its zenith" of constitutional protection. *Id.*

42. Laws that restrict *who* may initiate or sponsor an initiative petition are not mere administrative conditions—they are direct regulations of political expression. Because such restrictions diminish the number of voices and the avenues through which political ideas may be disseminated, they are subject to strict scrutiny. *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 192 n.12 (1999).

43. As the Ninth Circuit confirmed in *Nader v. Brewer*, residency-based constraints on political participants "severely burden core political speech" and trigger strict scrutiny. 531 F.3d 1028, 1035–39 (9th Cir. 2008).

44. Nevada's requirement that **five local electors** must first agree to serve as official sponsors before circulation may begin, imposes a government-erected gatekeeping barrier that prevents individuals from speaking at all, unless they can first persuade others to publicly expose themselves.

45. This is the kind of pre-circulation restriction that the Supreme Court, Ninth Circuit, and Tenth Circuit have repeatedly condemned. See *Meyer*, 486 U.S. at 422; *Nader*, 531 F.3d at 1035–39; *Chandler v. City of Arvada*, 292 F.3d 1236, 1241–44 (10th Cir. 2002) (holding that residency limitations on petition participation "significantly reduce the total quantum of political speech").

46. The five-sponsor rule also disproportionately suppresses political advocacy involving controversial or stigmatized subjects—such as sex work—where individuals may privately support reform, but rationally decline to attach their names publicly due to professional, reputational, or community-based risks.

47. When the law demands *public exposure* as a precondition to initiating speech, it predictably thins the pool of participants and blocks entire viewpoints from entering the public arena.

48. Plaintiff has directly experienced this chilling effect. One individual, who explicitly supported reform, declined to serve as a sponsor, solely because he feared that public association with a sex-work-related initiative could jeopardize his employment as a school administrator.

49. This is precisely the real-world chilling effect that courts warn about in the initiative context, where effective advocacy cannot occur if individuals fear government-compelled exposure.

50. The operation of Nevada's five-sponsor rule is therefore not content-neutral in effect. By conditioning political expression on the willingness of others to accept personal risk, the State

8

has created a system that disproportionately silences disfavored, marginalized, or socially stigmatized viewpoints. As the Supreme Court held in Meyer and Buckley, the First Amendment does not allow the State to suppress political ideas through laws that limit "the number of voices who will convey [the] message." *Buckley*, 525 U.S. at 194–95.

51. Strict scrutiny applies because the law reduces the "quantum of political speech" by shrinking the pool of individuals permitted to initiate petition activity. *Chandler*, 292 F.3d at 1241–42; Nader, 531 F.3d at 1035–39. And once strict scrutiny is applied, the State cannot meet its burden.

52. Concerns about fraud, accountability, or administrative integrity are already fully addressed by Nevada's existing statutory safeguards: mandatory circulator affidavits, signature verification processes, and criminal penalties for fraudulent filings. Courts have consistently rejected residency-based or threshold restrictions where less restrictive means exist. See *Libertarian Party of Va. v. Judd,* 718 F.3d 308, 318 (4th Cir. 2013); *Yes On Term Limits v. Savage*, 550 F.3d 1023, 1030–32 (10th Cir. 2008).

53. Because Nevada's five-sponsor rule suppresses protected political expression **before it can occur**, is not narrowly tailored, and obstructs access to the initiative process in a manner incompatible with the First Amendment, it fails strict scrutiny and is unconstitutional.

54. The First Amendment does not permit the State to condition political expression on the willingness of four other local electors to publicly affiliate with the speaker's cause.

55. Plaintiff seeks declaratory and injunctive relief holding that the five-person sponsor requirement and local residency restriction in NRS 295.095(1) and NRS 295.205(1) impose an unconstitutional pre-circulation burden on core political speech, in violation of the First Amendment to the United States Constitution.

### Count III – Nevada Constitution, Article 19

56.  Plaintiff incorporates by reference paragraphs 1–55.

57. Article 19 of the Nevada Constitution reserves the initiative power directly to the people and expressly provides that this right is self-executing, requiring no legislative action or governmental permission to become operative.

58. Because the initiative power is self-executing, the Legislature's authority under Article 19 is strictly limited to enacting **reasonable** procedural regulations that **facilitate** the exercise of the right, and may not impose substantive conditions that restrict, impair, or condition access to the initiative power itself.

59. Although Article 19, Section 5 authorizes the Legislature to "provide by law for procedures to facilitate the operation" of the initiative process, the Nevada Supreme Court has made clear that this provision does not grant the Legislature unlimited authority to regulate the initiative power, nor does it permit enactments that directly inhibit or restrict the people's reserved rights.

60. In the Nevada Supreme Court case of *People ex rel. Angle v. Miller*, the Nevada Supreme Court held that Article 19, Section 5 must be read in harmony with the Constitution's self-executing reservation of initiative power, and that legislative enactments are permissible **only insofar as they facilitate—rather than impair—the initiative process**. The Court expressly rejected the argument that Section 5 authorizes procedural requirements that "directly inhibit the initiative process" or "unreasonably reduce the people's ability to exercise their initiative rights." *People ex rel. Angle v. Miller*, 192 P.3d 1166 (NV 2008).

61. The statutory requirement that at least five local electors agree to serve as sponsors before a city or county initiative petition may be circulated, functions not as a neutral procedural regulation, but as a **substantive gatekeeping device** that determines whether the initiative process may begin at all.

62. This five-sponsor threshold does not regulate the mechanics of signature verification, filing deadlines, or ballot placement. Instead, it only complicates and conditions access to the initiative

10

process, thereby preventing initiatives from ever reaching the circulation stage and foreclosing voter participation entirely.

63. By requiring five people to publicly agree to serve as sponsors before a local initiative may even begin, the Legislature effectively prevents the exercise of a constitutional right at the outset and is inconsistent with Article 19's self-executing nature and the Nevada Supreme Court's instruction that legislative procedures may not directly inhibit or restrict the initiative power.

64. The constitutional defect is further underscored by Nevada's disparate treatment of statewide initiatives, which may be initiated by a single sponsor. Nothing in the text, structure, or history of Article 19 authorizes the Legislature to impose **greater initiation burdens on local initiatives** than on statewide initiatives, particularly where the same constitutional right is being exercised.

65. By conditioning the exercise of the initiative power on the agreement of five local electors—rather than on the will of the electorate as expressed through signature gathering—NRS 295.095 and NRS 295.205 impermissibly narrow, burden, and impair the initiative right guaranteed by Article 19 of the Nevada Constitution.

66. Accordingly, the five-sponsor requirement and local residency rule set forth in NRS 295.095 and NRS 295.205 violate the plain language, structure, and purpose of Article 19 and are invalid under the Nevada Constitution as applied to the initiation of local initiative petitions.

### Count IV – First Amendment (Unnecessary Complexity and Confusion)

67. Plaintiff incorporates by reference paragraphs 1–66.

68. The First Amendment protects not only the right to advocate political change, but also the right to meaningfully participate in the initiative process without unnecessary procedural obstacles that deter or discourage such participation. *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988).

69. Laws regulating the initiative process that impose confusing, duplicative, or opaque procedural requirements burden core political speech by discouraging individuals from engaging in protected political activity at the outset of the process. When statutory design itself generates confusion, the resulting disengagement constitutes a constitutionally cognizable chilling effect.

70. Nevada's five-sponsor requirement contributes to unnecessary complexity by requiring residents to execute multiple distinct documents at the initiation stage—specifically, a sponsor authorization and, later, a separate petition signature—without any clear statutory explanation or compelling justification for the duplication. This multi-step requirement is not intuitive to ordinary voters and serves only to complicate the sponsorship process.

71. When Plaintiff explains to potential supporters that they must sign an initial sponsor authorization and that he must later return to obtain a second, separate signature on the petition itself, individuals frequently become confused, express reluctance, or disengage entirely. Many respond with surprise or frustration, asking why multiple signatures are required or indicating they are unwilling to deal with a repetitive or involved process.

72. This confusion arises *before* any sponsorship is completed. The statutory duplication itself deters participation and prevents Plaintiff from assembling the minimum number of sponsors needed to commence circulation. The chilling effect is particularly acute in small communities, where residents give limited time to unfamiliar processes and are especially sensitive to procedures that appear complicated or unclear.

73. This burden is further compounded by Plaintiff's facial disability, which affects initial social interactions and requires him to communicate complex procedures within the brief attention windows individuals typically afford a stranger.

74. When the statutory process demands a multi-step explanation, potential supporters often lose interest or become overwhelmed in the first 20–30 seconds, reinforcing the chilling effect the statute imposes.

75. The confusion and disengagement Plaintiff encounters are not the result of unclear messaging or poor explanation; rather, they stem directly from the inherent complexity and duplicative structure of Nevada's statutory scheme.

76. By requiring multiple signatures for reasons not evident from the statute or the process itself, Nevada's laws impose unnecessary cognitive and procedural barriers to political participation.

77. The State cannot demonstrate that this confusion-inducing structure is narrowly tailored to serve a compelling governmental interest.

78. Plaintiff seeks declaratory and injunctive relief holding that the five-person sponsor requirement and associated multi-step signature structure contained in NRS 295.095(1) and NRS 295.205(1) impose unnecessary, confusing, and speech-deterring procedural barriers in violation of the First Amendment to the United States Constitution.

### Count V – 42 U.S.C. § 1983

79. Plaintiff incorporates by reference paragraphs 1–78.

80. Defendants, acting under color of state law, enforce Nevada statutes that deprive Plaintiff of his rights under the First and Fourteenth Amendments of the U.S. Constitution.

81. Plaintiff is entitled to relief under 42 U.S.C. § 1983, including declaratory and injunctive relief, as well as attorney's fees pursuant to 42 U.S.C. § 1988(b).

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A. Declare that the five-person sponsor threshold and local residency requirement set forth in NRS 295.095(1) and NRS 295.205(1), as applied to the initiation of local initiative petitions, violate the First and Fourteenth Amendments to the United States Constitution and Article 19 of the Nevada Constitution;

B. Enjoin Defendant from enforcing the five-person sponsor threshold and local residency requirement, set forth in NRS 295.095(1) and NRS 295.205(1), as applied to the initiation of city and county initiative petitions

C. Order that one sponsor, regardless of where he resides within Nevada, may initiate a local

petition;

D. Award Plaintiff costs and attorney's fees under 42 U.S.C. § 1988;

E. Grant all other relief as this Court deems just and proper;

F. Resolve this matter on an ***expedited basis,*** ideally by **March 2026**, so that Plaintiff and other voters may begin gathering signatures to qualify for the November 2026 general election.

Respectfully submitted


DATED:  January 9th, 2026


                Russell Greer
                /rgreer/
                Pro Se


*Note: Plaintiff has training and experience as a paralegal and is therefore familiar with legal research, drafting, and procedure. Plaintiff is fully capable of representing himself and brings this action in good faith.*