

Russell Greer
c/o A Safer Nevada PAC
10409 Pacific Palisades Ave
Las Vegas, NV 89144
contact@asafernevada.org
801-895-3501

## IN THE U.S. DISTRICT COURT

## OF NEVADA

| | |
|---|---|
| **RUSSELL GREER,** an individual,<br><br>Plaintiff<br><br>v.<br><br>**FRANCISCO V. AGUILAR,** in his official capacity,<br><br>Defendant | **PLAINTIFF'S EX PARTE EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No.: 2:25-cv-02581<br><br>District Judge: Richard F Boulware, II<br><br>Magistrate Judge: Brenda Weksle |

Plaintiff Russell Greer, pro se, respectfully moves **ex parte** for an **emergency preliminary injunction** enjoining enforcement of Nevada's five-sponsor and local-residency requirements for local initiative petitions—NRS 295.095(1) (counties) and NRS 295.205(1) (cities)—pending final judgment.

Plaintiff files this motion ex parte because:

(1) Defendant has failed to appear, answer, or otherwise defend within the Rule 12(a)(1)(A)(i) deadline, despite proper service;

(2) Time-sensitive election deadlines (June 26, 2026 qualification deadline) require immediate relief; and

(3) Waiting for ordinary noticed briefing would irreparably deprive Plaintiff of his First Amendment rights during the 2026 cycle.

This motion is based on the complaint on file and attached exhibits.

## I. BACKGROUND & EX PARTE BASIS

**A. Proper Service Was Completed on January 28, 2026**

On January 22, 2026, Plaintiff emailed the Nevada Secretary of State's Elections Division, asking where service should be made. The SOS provided THIS written instruction: "Service of process for the Nevada Secretary of State may be accepted by any staff member at the front desk of our Carson City office or by any staff member at the front desk of our Las Vegas office: Las Vegas: 1 State of Nevada Way, Las Vegas, NV 89119." A true and correct screenshot of this email is attached as **Exhibit A**.

**B. Plaintiff's Process Server Served the EXACT Address the SOS Directed**

The Affidavit of Service (**Exhibit B**) shows:

- Service occurred **January 28, 2026 at 1:23 PM**
- At **1 State of Nevada Way, Las Vegas, NV 89119**
- On a staff member authorized to accept service
- In accordance with FRCP Rule 4(j)(2)

2

Thus, **service was proper**, complete, and expressly consistent with the Secretary of State's own instructions.

**C. Defendant's Answer Was Due February 18, 2026 Under FRCP 12(a)(1)(A)(i)**

Because Defendant is a state official, is NOT the United States, is NOT a federal agency, and did not waive service under Rule 4(d), the applicable answer deadline is the default 21-day deadline:Rule 12(a)(1)(A)(i), which says: "A defendant must serve an answer **within 21 days** after being served with the summons and complaint."

21 days from January 28, 2026 was February 18, 2026. The deadline has passed.

**D. Defendant Failed to Answer or Appear**

As of the filing of this emergency motion: no answer has been filed. No Rule 12(b) motion has been filed. No notice of appearance has been filed. No extension has been requested. Under Rule 55(a), Defendant is already in default for failing to "plead or otherwise defend." This failure to appear, coupled with imminent election deadlines, **justifies** ex parte emergency

**II. INTRODUCTION**

This action presents a narrow, as-applied constitutional challenge to Nevada statutes requiring five local electors to sponsor a city or county initiative petition before circulation may begin, while permitting a single Nevadan to initiate a statewide petition. Compare NRS 295.095(1) and NRS 295.205(1) with NRS 295.015(1).

Plaintiff is a Nevada voter, who runs a grassroots PAC (A Safer Nevada), focused on expanding brothel legalization through ballot initiative. Plaintiff has repeatedly attempted, in 2022 and 2024, to initiate lawful, local initiative petitions. Each attempt failed at the threshold sponsorship stage because Nevada law requires five local residents to publicly attach their names before circulation may begin. As alleged in the complaint, potential sponsors withdrew or declined to participate, due to fear of social, professional, or reputational consequences, and

3

confusion surrounding the sponsorship process further derailed the efforts. As a result, Plaintiff was prevented from circulating petitions in West Wendover, Winnemucca and Clark County.

West Wendover sits in Elko County and is a popular casino town, tourist destination. Elko County has brothels and allows prostitution in incorporated communities. West Wendover was incorporated in 1990, long after Elko County enacted its brothel laws. West Wendover's city council voted in 1990 to not allow brothels. The voters of the town have never weighed in on the issue. Plaintiff seeks to have the voters finally vote on brothels, but the 5 person and local rule prevents Plaintiff from circulating a petition.

Winnemucca is an incorporated town in Humboldt County. It has had brothels since the 1940s, properly licensed in the 1970s. The red light district is zoned in an industrial area called Baud Street. In 2019, brothel mogul Lance Gilman bought the red light district and demolished the historic buildings, seeking to build one giant brothel. COVID prevented his plans from materializing. Since then, the lot has sat empty. Talking to locals, they lamented the demolition. Plaintiff petitioned the Winnemucca City Council in 2025 to amend the zoning ordinance and Mayor Stone declined. Plaintiff seeks to have voters vote on expanding the brothel zone.

Clark County is the largest county in Nevada and has never (post 1971) allowed brothels, due to NRS 244.345(8)'s population threshold not allowing brothels in counties with more than 700,000 people. Clark County has nearly 3 million residents. Plaintiff seeks to circulate a petition to introduce a "trigger law ordinance" that would legalize brothels in Clark County, upon NRS 244.345(8) being amended. Finding 5 voters, who are willing to put their names on a public document, has been difficult, even those who privately support Clark County legalizing prostitution, due to reputational concerns.

Plaintiff intends again to initiate local initiative petitions to qualify for the **November 3, 2026** general election. Local initiatives must be qualified no later than **June 26, 2026**—130 days before the election. Absent preliminary injunctive relief, Plaintiff will again be barred from

exercising his First Amendment and initiative rights during the 2026 cycle because it has been unbelievably difficult finding 5 people to ***publicly*** sponsor and circulate the petition.

Plaintiff seeks relief, enjoining enforcement of the five-sponsor requirement and the residency requirement, as applied to the initiation of local petitions, and ordering acceptance of local initiative filings sponsored by a single qualified Nevada elector, regardless of local residency, consistent with the statewide rule in NRS 295.015(1).

## II. STANDARD FOR PRELIMINARY INJUNCTION

A preliminary injunction may issue where the movant shows:

(1) a likelihood of success on the merits;

(2) a likelihood of irreparable harm absent relief;

(3) that the balance of equities tips in the movant's favor; and

(4) that an injunction is in the public interest.

*Winter v. NRDC*, 129 S. Ct. 555 U.S. 7 (2008).

When First Amendment rights are burdened, the loss of constitutional freedoms "for even minimal periods of time" constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The 9th Circuit has stated that laws similar as the challenged laws here must be challenged under strict scrutiny. "The severity of the burden the election law imposes on the plaintiff's rights, dictates the level of scrutiny applied by the court." *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008)

## III. ARGUMENT

**A. Plaintiff Is Likely to Succeed on the Merits**

**1. The Five-Sponsor & Local Requirement Imposes an Unconstitutional Pre-Circulation Burden on Core Political Speech (First Amendment)**

5

Initiating, sponsoring, and circulating initiative petitions constitutes "core political speech" protected by the First Amendment. *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). Laws that restrict who may initiate or sponsor a petition before circulation, directly burden political expression and are subject to heightened scrutiny. *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 192 n.12 (1999).

As alleged in the complaint, NRS 295.095(1) and NRS 295.205(1) erect a pre-circulation gate by requiring **five local** electors to publicly serve as sponsors before any speech—petition circulation—may begin. This requirement disproportionately suppresses speech concerning controversial subjects, including sex-work policy, where individuals may privately support reform, but are unwilling to publicly associate their names with the measure, due to fear of reputational harm, employment consequences, or social ostracism.

Plaintiff has personally experienced this chilling effect. In 2022 and 2024, Plaintiff attempted to initiate a petition in West Wendover, Elko County, Nevada. The ballot initiative was aimed to legalize brothels in that city. Plaintiff was unable to proceed because willing supporters withdrew or declined to serve as sponsors. In one instance, a local supporter initially agreed to sponsor, but later withdrew, collapsing the initiative before circulation could begin.

Plaintiff could easily just file the affidavit with his name on it to circulate the petition in his targeted city jurisdiction, just like NRS 295.015 allows for state initiatives, but the challenged statutes forecloses that opportunity.

The five local-sponsor requirement thus operates as a pre-speech barrier that suppresses protected expression before it can reach the electorate. The challenged statutes shrink the pool of willing sponsors. *Nader v. Brewer*, 531 F.3d 1028, 1035–39 (9th Cir. 2008). I The State cannot demonstrate that this requirement is narrowly tailored to serve any compelling interest, particularly where existing affidavit requirements, signature verification procedures, and

criminal penalties already address concerns regarding fraud or accountability. The statute cannot survive strict scrutiny and therefore violates the First Amendment.

**2. The Five-Sponsor Requirement Violates Equal Protection**

The Equal Protection Clause requires that similarly situated individuals be treated alike, particularly where a fundamental political right is burdened. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

Nevada law permits a single Nevadan to initiate a statewide initiative petition under NRS 295.015(1), but requires **five** qualified, **local** electors to initiate a city or county petition under NRS 295.095(1) and NRS 295.205(1). Both statewide and local initiatives are exercises of the same fundamental right reserved to the people under Article 19 of the Nevada Constitution. There is no meaningful distinction justifying a higher sponsor threshold for local initiatives.

The statutes further discriminate among Nevada electors based on residency. A Nevada voter may serve as the sole sponsor of a statewide initiative anywhere in the state, but may not sponsor a local initiative, unless he resides in the affected jurisdiction and recruits additional local residents. This residency-based classification burdens the exercise of a fundamental political right and is subject to strict scrutiny. *Buckley*, 525 U.S. at 197–99; *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1029–31 (10th Cir. 2008).

To further underscore the equal protection violation: a statewide petitioner could sign a petition and then collect signatures in a jurisdiction that he isn't even a resident of (since there are four Congressional districts in Nevada), but that same person cannot initiate a local initiative because he doesn't reside there and because he is not 5 persons. NRS 295.095(1) and NRS 295.205(1) are *insufficiently* tailored to constitutionally justify the burden it inflicts on the free exercise of rights. *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 318 (4th Cir. 2013).

The State cannot show that the five-sponsor, local requirement is narrowly tailored to serve a compelling governmental interest. Accordingly, Plaintiff is likely to succeed on his Equal Protection claim.

**3. The Five-Sponsor Requirement Violates Article 19 of the Nevada Constitution**

Article 19 of the Nevada Constitution reserves the initiative power directly to the people and expressly provides that the right is self-executing, requiring no legislative permission to be exercised. Nev. Const. art. 19, §§ 1–2. While the Legislature may enact procedural regulations to facilitate the operation of the initiative process, its authorityqq is strictly limited to measures that aid the exercise of the right and may not be used to impose barriers that impair or restrict access to the initiative power. *People ex rel. Angle v. Miller*, 192 P.3d 1166 (NV 2008).

As alleged, the five-sponsor requirement does not merely regulate the mechanics of the initiativesaaqqqqqqqqq process, such as formatting, verification, or timing. Instead, it operates as a **substantive gatekeeping rule** that blocks access to the initiative process, unless five individuals are willing to publicly associate themselves as sponsors before circulation may begin. By conditioning initiation on this prerequisite, the Legislature itself erects a barrier that can prevent initiatives from ever reaching voters, regardless of public interest or support.

The Nevada Supreme Court has made clear that Article 19's authorization for legislative "procedures" does not permit enactments that directly inhibit or restrict the initiative power reserved to the people. In *People ex rel. Angle v. Miller*, the Court rejected reliance on Article 19, Section 5 where a statutory rule shortened or constrained the initiative process in a manner inconsistent with the Constitution's self-executing design, emphasizing that facilitation does not include laws that block or frustrate the exercise of the right. *People ex rel. Angle v. Miller,* 192 P.3d 1166 (NV 2008).

8

The constitutional defect is further highlighted by Nevada's disparate treatment of statewide initiatives, which may be initiated by a single sponsor. Nothing in Article 19's text or structure authorizes the Legislature to impose greater initiation burdens on local initiatives than on statewide initiatives, particularly where the same constitutional right is being exercised. To the contrary, Article 19 expressly reserves the initiative power to voters at both the state and local levels.

Because the five-sponsor requirement functions as a pre-circulation barrier that blocks access to the initiative process and impairs a self-executing constitutional right, Plaintiff is likely to succeed on the merits of his claim that the requirement violates Article 19 of the Nevada Constitution.

**4. The Five-Sponsor Requirement Creates Confusing and Redundant Procedures That Independently Burden Protected Speech**

The First Amendment also protects meaningful participation in the initiative process without unnecessary procedural complexity that deters involvement. As alleged, Nevada's five-sponsor requirement contributes to confusion by requiring residents to execute multiple documents at the initiation stage, including circulation authorization and separate petition signatures, without clear justification.

Plaintiff has found that this confusion discourages participation and delays petition efforts, particularly in small communities. These redundant and opaque requirements are not narrowly tailored to serve any compelling interest and independently burden protected political expression.

**B. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief**

The loss of First Amendment freedoms, even temporarily, constitutes irreparable harm. *Elrod*, 427 U.S. at 373. Plaintiff faces imminent harm because local initiatives for the November 2026 election must be qualified by June 26, 2026. Without relief, Plaintiff will again be prevented

from initiating local petitions during the 2026 cycle—a harm that cannot be remedied after the election passes.q

**C. The Balance of Equities Favors Plaintiff**

Plaintiff faces the loss of constitutional rights and the inability to participate in the initiative process. By contrast, Defendants would face only minimal administrative adjustment in accepting local initiative filings sponsored by a single Nevada elector, pending final judgment. The balance of equities strongly favors Plaintiff.

**D. An Injunction Serves the Public Interest**

It is always in the public interest to protect constitutional rights and to ensure voters have access to the initiative process. Enjoining enforcement of an unconstitutional barrier promotes democratic participation and preserves the people's reserved initiative power. Enjoining these statutes allows not just brothel initiatives to be circulated easier, but can allow any controversial petition to circulate easier, such as abortion and LGBTQ issues.

**IV. REQUESTED RELIEF**

Plaintiff respectfully requests that the Court:

1. Enjoin enforcement of NRS 295.095(1) and NRS 295.205(1) to the extent they require five local sponsors to initiate a city or county initiative petition and to the extent they require local residency;
2. Order that local initiative petitions may be initiated by a single qualified Nevada elector, consistent with NRS 295.015(1), pending final judgment; and
3. Set expedited briefing and consideration by March 2026.

**V. CONCLUSION**

Because Plaintiff has demonstrated a likelihood of success on the merits, irreparable harm, and that the balance of equities and public interest favor relief, the Court should grant this Motion for Preliminary Injunction.

DATED: February 19th, 2026

                                        Respectfully submitted,
                                        Russell Greer
                                        /rgreer/
                                        Pro Se

*Note: Plaintiff has training and experience as a paralegal and is therefore familiar with legal research, drafting, and procedure. Plaintiff is fully capable of representing himself and brings this action in good faith.*

**EXHIBIT A**



**EXHIBIT B**

## AFFIDAVIT OF SERVICE

### UNITED STATES DISTRICT COURT
### District of Nevada

Case Number: 2:25-CV-02581-RFB-BNW

Plaintiff:
**RUSSELL GREER, an individual**

vs.

Defendant:
**FRANCISCO V. AGUILAR, in his official capacity as the Secretary of State of Nevada**

Received by Bullet Legal Services on the 23rd day of January, 2026 at 11:07 am to be served on **FRANCISCO V. AGUILAR in his official capacity as the Secretary of State of Nevada, Nevada Secretary of State, 1 State of Nevada Way, Las Vegas, NV 89119**.

I, Anthony Spada, being duly sworn, depose and say that on the **28th day of January, 2026 at 1:23 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **SUMMONS IN A CIVIL ACTION and PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF** to: **JACKIE REYES** as Office Clerk, authorized to accept, at the address of: **Nevada Secretary of State, 1 State of Nevada Way, Las Vegas, NV 89119**.

**Description** of Person Served: Age: 25, Sex: F, Race/Skin Color: HISPANIC, Height: SIT, Weight: SIT, Hair: BROWN, Glasses: N

I certify that at all times herein Affiant was and is a citizen of the United States, over 18 years of age, and not a party to or interested in the proceeding in which this affidavit is made.

Anthony Spada
R-2018-06348

State of Nevada
County of Clark

Subscribed and Sworn to before me on the 30th day of January, 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

BERT LOTT
NOTARY PUBLIC
STATE OF NEVADA
APPT. NO. 07-4864-1
MY APPT. EXPIRES SEPTEMBER 14, 2027

**Bullet Legal Services**
1930 Village Center Circle, #3-965
Las Vegas, NV 89134
(702) 823-1000

Our Job Serial Number: BRT-2026000234

Copyright © 1992-2026 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0e

