UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Russell Greer, | Case No.: 2:25-cv-02581-JAD-BNW |
| Plaintiff | |
| v. | |
| Francisco V. Aguilar, | **Order Denying Emergency Motion for Preliminary Injunction** |
| Defendant | [ECF No. 14] |

Before proponents can circulate a petition for a state or county ballot initiative, Nevada's local-initiative statutes require five local registered voters to publicly sponsor the petition and for those voters to be residents of that county or city.[1] Unrepresented Nevada resident and political activist Russell Greer brings a constitutional challenge to those statutory requirements, contending that these statutes have frustrated his effort to bring local initiatives to legalize brothels or expand red-light districts.[2] He theorizes that the requirements violate his First Amendment rights, the Equal Protection Clause of the Fourteenth Amendment, and Article 19 of the Nevada Constitution and can't pass muster under strict scrutiny.[3] Greer moves for an

---

[1] Nev. Rev. Stat. § 295.095(1) ("Any five registered voters of the county may commence initiative or referendum proceedings by filing with the county clerk an affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form, stating their names and addresses and specifying the address to which all notices to the committee are to be sent, and setting out in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered."); Nev. Rev. Stat. § 295.205(1)(b) ("Any five registered voters of the city may commence initiative or referendum proceedings by filing with the city clerk an affidavit . . . [s]tating their names and addresses . . .").

[2] *See generally* ECF No. 8. Greer sues the Nevada Secretary of State who has not appeared in this action.

[3] *See generally id.*

emergency preliminary injunction, arguing that the June deadline to submit his initiative warrants expedited review.[4] But Greer cannot establish a likelihood of success on the merits of his constitutional claims because he has not shown either that strict scrutiny applies here or that these requirements' minimal burden on those rights doesn't pass constitutional muster under Ninth Circuit precedent. So I find that Greer has not met his high burden for this equitable relief, and I deny his request to enjoin enforcement of the local-initiative statutes.

## Analysis

The legal standard for issuing a temporary restraining order and the legal standard for preliminary injunctive relief are "substantially identical."[5] Both are "extraordinary" remedies and "never awarded as of right."[6] The United States Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[7] The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor' and the other two *Winter* factors are satisfied."[8]

---

[4] ECF No. 14.

[5] *See Stuhlbarg Intern. Sales Co. v. John D. Bush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[6] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[7] *Id.* at 20.

[8] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)) (cleaned up).

**A.      Greer has not shown that he is likely to succeed on the merits of his First Amendment or Article 19 claims.**

"The First Amendment, as made applicable to the states by the Fourteenth Amendment, prohibits states from enacting laws 'abridging the freedom of speech.'"[9]  "Although there is no constitutional right to enact state laws or constitutional amendments through an initiative process, if a state allows for initiatives through a petitioning process, the gathering of signatures and circulating of initiative petitions are protected by the First Amendment."[10]  Article 19, Sections 1 and 2 of the Nevada Constitution state that "the people reserve to themselves the power to propose" law "by initiative."[11]  "Despite the breadth of this language, . . . some restrictions on speech are constitutional, provided they survive the appropriate level of scrutiny."[12]  And "[t]he First Amendment permits states 'considerable leeway' in regulating the electoral process, provided their choices do not produce 'undue hindrances to political conversations and the exchange of ideas.'"[13]

   *1.      Strict scrutiny does not apply here.*

The initiative statutes impose essentially three requirements: that a local initiative have five official proponents, that those five proponents be residents, and that the five proponents be publicly disclosed.  Greer argues that each of these requirements warrants the highest level of constitutional scrutiny—strict scrutiny—because the taboo nature of his petition has made it

---

[9] *Pierce v. Jacobsen*, 44 F.4th 853, 859 (9th Cir. 2022).

[10] *Id.* (citing *Meyer v. Grant*, 486 U.S. 414, 420 (U.S. 1988)).

[11] Nev. Const. Art. 19, §§ 1–2.

[12] *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1070 (9th Cir. 2022); *Montana Med. Ass'n v. Knudsen*, 119 F.4th 618, 629 (9th Cir. 2024).

[13] *Angle v. Miller*, 673 F.3d 1122, 1135 (9th Cir. 2012).

"unbelievably difficult" to find even five local voters to publicly support his petition.[14]  He contends that the requirements have also previously stymied his initiative efforts in several Nevada cities and counties such as West Wendover, Winnemucca, and Clark County.[15]

In this particular context, the First Amendment requires strict scrutiny "only where the challenged law severely burdens the ability to place an initiative on the ballot."[16]  If so, the law must "be narrowly tailored and advance a compelling state interest."[17]  Otherwise the court applies a "less exacting" standard of review,[18] and the law will be upheld if it serves "an important regulatory interest."[19]  The analysis of the right to circulate referenda and petitions under Article 19 of the Nevada Constitution "is identical to that under the First Amendment."[20]

But Greer is unlikely to succeed on his strict-scrutiny bid because the Ninth Circuit has held that public disclosure requirements and residency restrictions on official proponents of an initiative do not warrant strict scrutiny.[21]  In *Chula Vista Citizens for Jobs and Fair Competition v. Norris*, business associations challenged state and city requirements that an official proponent of a local city initiative be registered to vote in that city and that the official proponent's name appear on the circulated petition.[22]  The associations theorized that those requirements violated the First and Fourteenth Amendments by preventing the associations (who cannot vote) from

---

[14] ECF No. 14 at 5.
[15] *Id.*
[16] *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 536 (9th Cir. 2015).
[17] *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1007 (9th Cir. 2003).
[18] *Id.*; *Angle*, 673 F.3d at 1134–35.
[19] *Angle*, 673 F.3d at 1134–35.
[20] *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 100 P.3d 179, 187 (Nev. 2004).
[21] *Chula Vista Citizens*, 782 F.3d at 536–37.
[22] *Id.* at 526.

proposing initiatives and that the disclosure requirements chilled voters from serving as proponents.[23]  The Ninth Circuit rejected the associations' request for strict scrutiny review because the residency requirement did not restrict non-electors' speech rights, it just limited their role as "an official proponent—a unique legislative position that may properly be reserved to members of the political community."[24]  The associations also offered no evidence that the restriction "burden[ed] the ability to qualify measures for the ballot, reducing the total quantum of political speech and triggering heightened scrutiny."[25]  Likewise, "[n]othing" in the disclosure requirement "limit[ed] the quantity of speech that a proponent or anyone else may otherwise engage in to promote the initiative, and an initiative's official proponent [could] still engage in anonymous speech about the proposed ballot measure or any other topic."[26]

The Ninth Circuit similarly held that requiring initiative proponents to show some minimum quantum of support does not call for strict scrutiny.  In *Angle v. Miller*, the Ninth Circuit upheld Nevada's requirement that, before a statewide initiative can appear on the ballot, proponents of statewide initiatives must collect "signatures from a number of registered voters equal to 10 percent of the votes cast in the previous general election in each of the state's congressional districts."[27]  Strict scrutiny was not the appropriate level of review because "ballot access restrictions place a severe burden on core political speech and trigger strict scrutiny" only "when they significantly inhibit the ability of initiative proponents to place initiatives on the

---

[23] *See Chula Vista Citizens*, 782 F.3d at 526, 536.
[24] *Id.* at 533–34.
[25] *Id.* at 534.
[26] *Id.* at 536.
[27] *Angle*, 673 F.3d at 1126.

5

ballot."[28] And the *Angle* plaintiffs did "not present[] any evidence that, despite reasonably diligent efforts, they and other initiative proponents [had] been unable to qualify initiatives for the ballot as a result of" Nevada's initiative statutes.[29]

Nevada's local initiative requirements closely track those validated in *Chula Vista Citizens* and impose a much lighter burden than the requirements upheld in *Angle*. Although Greer lists a few instances in which his inability to find five voters has thwarted his petition efforts, finding five voters is a low burden for a petitioner.[30] Greer has not shown at this stage that his struggles to find five voters are any more than isolated incidents and that these laws meet the standard for strict scrutiny—that these laws have the practical effect of significantly inhibiting a "reasonably diligent" person from bringing an initiative.[31] So Greer has not established that strict scrutiny applies here, and the State need only show that the laws serve an important regulatory interest.[32]

---

[28] *Id.* at 1133 (cleaned up).

[29] *Id.* at 1134.

[30] *Cf. Arizona Libertarian Party v. Hobbs*, 925 F.3d 1085, 1091 (9th Cir. 2019) ("[A] state may require a candidate to demonstrate support from slightly, but not 'substantially,' *more than 5% of voters* without imposing a severe burden triggering heightened scrutiny.") (emphasis added).

[31] *Angle*, 673 F.3d at 1133 ("[W]e assume that ballot access restrictions place a severe burden on core political speech, and trigger strict scrutiny, when they significantly inhibit the ability of initiative proponents to place initiatives on the ballot.").

[32] The cases Greer relies on, such as *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) and *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 186 (1999), do not alter this result. Those cases applied strict scrutiny and struck down residency and disclosure requirements on petition circulators—those who actually engage in direct voter contact—because such requirements unnecessarily restrict their speech and associational rights. *See, e.g.*, *Nader*, 531 F.3d at 1036. But the Ninth Circuit has distinguished those cases from residency requirements for those acting as an official proponent, noting that the official proponent is a unique, quasi-legislative role that the government may constitutionally restrict. *Chula Vista Citizens*, 782 F.3d at 533.

### 2. The local-initiative statutes serve an important regulatory interest and pass constitutional muster.

Although Greer frames his challenge through strict scrutiny, his primary theory is that these requirements are confusing and poorly tailored compared to the burden they impose on his First Amendment and Article 19 rights.[33] He contends that the requirements burden his speech rights because publicly disclosing proponents discourages initiatives on taboo topics and he could sponsor his local initiatives himself but for the fact that he is not a resident of these cities and counties and he is only one, and not five, voters.[34] He notes that Nevada's statewide-initiative statute only requires one official proponent, but the local-initiative statutes require five proponents and those proponents must be residents.[35] So the law is poorly tailored in his estimation.

Local residency and disclosure requirements serve an important regulatory interest. Applying a "less exacting" standard of review in *Chula Vista Citizens*, the Ninth Circuit upheld local-elector requirements, reasoning that "states and cities may, wholly consistent with the First Amendment, require that those who seek to propose legislation . . . be electors" because official proponents "play a special role with unique responsibilities and powers in the legislative process."[36] The disclosure requirement was similarly upheld in *Chula Vista Citizens* because the "disclosure of the identities of the official proponents of an initiative measure places only a minimal burden on First Amendment rights, if it imposes any burden at all."[37] And disclosure

---

[33] *See* ECF No. 14 at 6–9.
[34] *Id.* at 6–7.
[35] *Id.* at 7.
[36] *Chula Vista Citizens*, 782 F.3d at 531.
[37] *Id.* at 536.

requirements "serve[] the government's interest in electoral integrity in three ways: First, because the official proponents are charged with forthrightly and faithfully implementing the initiative process, voters signing the petitions are entitled to know their identities. Second, requiring an official proponent to publicly associate his name with the measure he proposes helps ensure that only initiatives with at least a modicum of local support are presented to the voters. Third, requiring identification of the official proponent serves to deter misleading or spoiler initiatives."[38]

The Ninth Circuit has similarly held that states may require initiative proponents to provide proof of grassroots support.[39] For example, the *Angle* panel recognized that "Nevada undeniably has an important regulatory interest 'in making sure that an initiative has sufficient grassroots support to be placed on the ballot,'"[40] and that courts must afford significant "leeway" "to a state's decision about how to measure the grassroots support sufficient to qualify an initiative for the ballot."[41] So Nevada's requirement that statewide initiatives needed signatures from 10 percent of voters in the last election in each congressional district to qualify for the ballot served an important regulatory interest and survived the "less exacting" level of scrutiny.[42]

Greer has not meaningfully distinguished this case from *Chula Vista Citizens* or *Angle*. As those panels recognized, the state has an "interest in limiting participation in that government to those who are within the basic conception of a political community," "defin[ing] its political

---

[38] *Id.* at 538.
[39] *See Angle*, 673 F.3d at 1135.
[40] *Id.* (quoting *Meyer*, 486 U.S. at 425–26).
[41] *Id.*
[42] *Id.* at 1135–36.

community,"[43] and "making sure that an initiative has sufficient grassroots support to be placed on the ballot."[44] These minimal requirements are sufficiently tailored to serve that interest. The residency and disclosure requirements are either identical or less burdensome than the laws upheld in *Chula*; the main difference is that Nevada's local-initiative statutes require five local electors rather than just one. While the five-voter requirement likely imposes a slight additional gatekeeping burden over the law in *Chula Vista Citizens*, the level of support required and the burden imposed by the requirement is orders of magnitude lower than the requirement upheld in *Angle*. Greer is thus unlikely to show that he can overcome Nevada's interest in these statutes. So I find that Greer is unlikely to succeed on the merits of his First Amendment and Article 19 claim.

**B.      Greer has not shown that he is likely to succeed on his equal-protection challenge.**

Greer also claims that the requirement that the initiative's five proponents be residents of the county or city violates the equal-protection rights of nonresidents. The Equal Protection Clause proscribes states from "deny[ing] to any person within its jurisdiction the equal protection of the laws."[45] Strict scrutiny applies if a state law or regulation differently "classifies by race, alienage, or national origin" or significantly burdens a class's exercise of a fundamental right.[46] In most cases, however, rational basis applies, and a showing that "any reasonably conceivable

---

[43] *Chula Vista Citizens*, 782 F.3d at 531.

[44] *Angle*, 673 F.3d at 1135 (cleaned up).

[45] U.S. Const. amend. XIV, § 1, cl. 1; *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954).

[46] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985); *Graham v. Richardson*, 403 U.S. 365, 375 (1971).

set of facts that could provide a rational basis for the law" will shield a law from an equal-protection challenge.[47]

Greer's argument that the Equal Protection Clause requires strict scrutiny is unavailing because the Ninth Circuit has expressly held county residency is not a protected class.[48] Nor does the requirement impose such a burden on fundamental speech rights to garner strict scrutiny because the statutes restrict only nonresidents' ability to act as official proponents of an initiative, not the ability to speak about that initiative.[49] Rational basis thus applies.

The law likely passes rational basis muster based on the Ninth Circuit's opinion in *Chula Vista Citizens*. As explained *supra*, there is a rational basis for the requirement: the state's interest in assuring local grassroots support for initiatives and allowing local government to "define its" own "political community."[50] And the law is logically connected to those interests: "[t]he elector requirement operates to ensure that those who exercise this unique legislative power are members of the political community who will be bound by the proposed initiative should it become law."[51] So Greer is unlikely to succeed on the merits of any of his claims.

---

[47] *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

[48] *See, e.g.*, *Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018) ("County of residence is not a suspect classification warranting heightened scrutiny.").

[49] *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("[E]lection laws will invariably impose some burden upon individual voters . . . to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner suggests, would tie the hands of States seeking to assure that elections are operated equitably and efficiently."); *Chula Vista Citizens*, 782 F.3d at 535 (declining to apply strict scrutiny to California law limiting ability to act as an official proponent to residents).

[50] *Chula Vista Citizens*, 782 F.3d at 531, 539; *Angle*, 673 F.3d at 1135.

[51] *Chula Vista Citizens*, 782 F.3d at 531; *Sugarman v. Dougall*, 413 U.S. 634, 642–43 (1973) ("We recognize a State's interest in establishing its own form of government, and in limiting participation in that government to those who are within 'the basic conception of a political community' . . . [w]e recognize, too, the [s]tate's broad power to define its political community.").

**Conclusion**

Because Greer's failure to demonstrate either a likelihood of success on, or serious questions going to, the merits of his claims prevent him from obtaining injunctive relief, IT IS ORDERED that Greer's emergency motion for a preliminary injunction to enjoin Nevada's local-initiative statutes **[ECF No. 14] is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
March 3, 2026