Russell Greer
c/o A Safer Nevada PAC
10409 Pacific Palisades Ave
Las Vegas, NV 89144
contact@asafernevada.org
801-895-3501

# IN THE U.S. DISTRICT COURT

# OF NEVADA

| | |
|---|---|
| **RUSSELL GREER,** an individual,<br><br>    Plaintiff<br><br>v.<br><br>**FRANCISCO V. AGUILAR,** in his official capacity,<br><br>    Defendant | **RULE 60(b) MOTION FOR RELIEF FROM ORDER DENYING PRELIMINARY INJUNCTION**<br><br>Case No.: 2:25-cv-02581-JAD-BNW<br><br><br>District Judge: Jennifer A. Dorsey<br><br>Magistrate Judge: Brenda Weksle |

Plaintiff Plaintiff respectfully moves for relief from the Court's Order denying the Motion for Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 60(b)(1) and 60(b)(6). Relief is warranted because the Order rests on clear errors of law, most notably: not applying bf holding in *Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022). The Court also overlooked that Plaintiff did in fact distinguish his case from *Chula Vista Citizens v. Norris*, 782 F.3d 520 (9th Cir. 2015). The Court required evidentiary showings that *Pierce* expressly holds are not required and relied on authority not applicable to the type of restriction presented here.

The Court introduced a new authority sua sponte—*Angle v. Miller,* 673 F.3d 1122 (9th Cir. 2012)—after the Defendant failed to appear. Because Plaintiff had no opportunity to brief distinctions once *Angle* was raised for the first time in the Court's Order, reconsideration is appropriate so that these issues can be evaluated under the proper framework.

**I. Legal Standard**

Rule 60(b)(1) authorizes relief for legal error. Rule 60(b)(6) authorizes relief when necessary to prevent manifest injustice. A district court abuses its discretion where it fails to apply the correct legal standard or misapplies controlling circuit precedent.

**II. The Order Did Not Apply *Pierce v. Jacobsen*, Which Holds That No Evidence Is Required and Makes No Distinction Between Categories of Initiative Participants**

The Order denied relief on the ground that Plaintiff "presented no evidence" that the five-resident requirement burdens access to the initiative process.[1] This reasoning demonstrates

---

[1] To the contrary, Plaintiff *does* possess evidentiary material and is prepared to submit it in a Third Amended Complaint. Plaintiff did not attach exhibits at the pleading stage because Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim—not evidentiary proof—and because *Pierce* holds that empirical evidence is **not required** to establish that a residency-based restriction severely burdens core political participation. Plaintiff therefore pled the governing legal standards and structural burdens, but additional factual detail—including documented failed attempts to secure local sponsors—is available and can be formally included if the Court determines it necessary.

2

that *Pierce v. Jacobsen*, 44 F.4th 853 (9th Cir. 2022), was not applied. While the Court used *Pierce* as a footnote citation to set up the First Amendment argument, the Court did not apply *Pierce's* holding. Plaintiff wasn't required to cite the case for the case to be applied since it's binding 9th Circuit law.

 The plaintiffs in *Pierce* were ballot initiative proponents. *Pierce* directly addresses a similar evidentiary issue this Court relied upon in this present case and *Pierce* rejects the requirement of direct evidence of ballot placing difficulty, especially when the structure of the residency restriction itself limits participation and is the cause of the difficulty. The Ninth Circuit acknowledged that the plaintiffs in *Pierce* offered little beyond "bare speculation," and further acknowledged that fourteen initiatives had successfully qualified under the challenged law. Despite this, the 9th Circuit held that "lack of evidence" is not "dispositive" because the residency requirement issued an "outright ban" on non-residents and diminished "the pool" of people who may participate and therefore imposes a severe burden on both "out-of-state residents and in-state proponents."

  *Pierce* emphasized that initiative and candidate petitions "are treated similarly," and the case made no distinction among types of initiative participants. The decision did not limit its reasoning to circulators; it expressly included "in-state proponents" within the class whose rights were burdened. The constitutional analysis turned on the structure of the restriction—not the title of the individual affected.

  Similarly, Nevada's five-resident requirement operates in the same way as the ban in *Pierce*: the laws categorically exclude nonresidents and, in the context of stigmatized subject matter, functionally scares away many residents from serving as official proponents. As the Complaint stated, many people privately support brothel legalization, but won't attach their names. Because

3

the statute restricts who and mandates how many may initiate a local petition, it necessarily reduces the available pool of initiative proponents. Under *Pierce*, this suffices to establish a severe burden without requiring Plaintiff to produce evidence of unsuccessful qualification attempts.

Because the Order required evidentiary proof that *Pierce* expressly holds is not required, and because the Order did not apply *Pierce*'s controlling framework at all, reconsideration is warranted, so that it can be held that evidence isn't required and that strict scrutiny can be applied.

### III. Strict Scrutiny Applies Because the Five–Resident Requirement Severely Burdens Core Political Speech

The Court erred by saying strict scrutiny does not apply. As stated previously, if the Court had applied *Pierce,* the result would have been different. Indeed, once *Pierce* is correctly applied, the legal application is unavoidable: strict scrutiny governs this case.

The *Pierce* court actually set up a strict scrutiny test for initiative proponents. "The first consideration is the extent to which a restriction limits the number of voices carrying the initiative proponent's message and the size of the audience the proponent can reach. *Meyer,* 486 U.S. at 422-23, 108 S.Ct. 1886. The second consideration is the extent to which a restriction makes it less likely a proponent will get enough signatures to place the issue on the ballot, thereby limiting the ability to make the issue "the focus of…discussion." *Pierce v. Jacobsen,* 44 F.4th 853 (9th 2022). *Pierce* later added, "We assume that a restriction is a severe burden when it "significantly inhibit[s] the ability of initiative proponents to place initiatives on the ballot.

Although the *Pierce* court starts out with the two part *Meyer* test, the *Pierce Court* says that "Meyer did not create a two-part test, but rather identified certain considerations to help guide our review." *Id.* The Pierce court goes onto say that courts must weigh all the effects of the regulation to determine whether, on the whole, it severely burdens core political speech. Pierce

4

finds that "Plaintiffs have shown that the residency requirement imposes an outright ban on a form of core political speech for all non-residents and necessarily diminishes the pool of circulators." *Id.* Following that holding, *Pierce* applies here with full, guiding force and this Court failed to weigh all of the effects challenged statutes.

The Court's conclusion that finding five local residents is a "low bar" cannot be reconciled with *Pierce* or with the allegations already pled. As explained in the Second Amended Complaint, Plaintiff repeatedly encountered individuals who supported the subject matter of the initiatives, but refused to serve as official proponents because they feared professional harm, reputational backlash, or community stigma. Others initially agreed, but withdrew for the same reasons. These allegations demonstrate that the challenged statutes operate as a substantive barrier for natural persons proposing controversial measures. Forcing a petitioner to recruit five strangers willing to publicly expose themselves before a petition can even be filed is anything but a "low burden."

Moreover, *Pierce* held that "initiative petitions and candidate petitions are treated similarly" and applied *Nader's* reasoning that residency exclusions diminish the pool of eligible participants and therefore impose a severe burden. Under that framework, an **out-of-town proponent** is no different from an **out-of-state circulator** for burden analysis. Both are excluded from participating solely because of where they reside, and both restrictions shrink the number of voices available to engage in core political expression.

The Court may view the initiative's subject matter as "taboo," but that does not allow the Court to sidestep binding Ninth Circuit law. *Pierce* makes clear that when a residency requirement restricts who may participate at the filing stage and reduces the available pool of eligible proponents, strict scrutiny applies, regardless of evidence and regardless of whether the plaintiff is an initiative proponent or an initiative circulator.

5

The statutes here prevent Plaintiff from using **his own** core political speech to file **his own** petition, unless he can persuade five local residents (i.e. strangers) to publicly attach their names—an effect that squarely meets the definition of a severe burden under *Meyer*, *Buckley*, *Nader*, and *Pierce*.

The Court must reconsider its Order and apply strict scrutiny.

## III. The Order Misapplied *Chula Vista Citizens v. Norris* and Overlooked Distinctions that Were Already Pled

The Court's Order relies on *Chula Vista Citizens v. Norris* to suggest that residency restrictions and disclosure requirements imposed on "official proponents" do not trigger strict scrutiny. But *Chula Vista* does not support that conclusion. Its holding is narrow: it upheld an **elector requirement** applied to **corporations and associations**, and it upheld the disclosure of the proponent's name on circulated petitions. The Ninth Circuit repeatedly emphasized that the case did **not** involve natural persons and did **not** involve rules that restrict who may initiate legislation.

The 9th Circuit held, "*that is not what is at issue in this case. We repeat: a corporation or association is banned only from serving as an official proponent—a unique legislative position that may properly be reserved to members of the political community.*" 782 F.3d at 534. The entire decision rested on excluding *non-electors* (corporations) from being election proponents. Nothing in *Chula Vista* addressed residency-based barriers applied to natural persons, and nothing in the opinion suggested that a locality may bar a qualified elector from initiating legislation unless he resides within that specific jurisdiction.

To repeat *Chula Vista:* corporations are not "what is at issue in this case." Nevada's five-local-resident rule is fundamentally different. Plaintiff is a Nevada resident and a qualified elector, but he is **not a resident of every Nevada locality** in which he may seek to propose legislation.

6

Under the statute, a natural person may not initiate a local measure unless five **local** voters (electors) publicly attach their names.

This is a **local residency barrier** that prevents non-local Nevada electors from filing initiatives at all. *Chula Vista* did not consider, approve, or analyze any such rule. It upheld a requirement designed to exclude artificial entities—not a requirement that restricts natural persons from initiating legislation outside their immediate municipal boundaries.

As applied to initiatives involving stigmatized subject matter—what the Order itself labeled a "taboo" initiative—the five-local-resident rule forces individuals to publicly identify themselves as supporters before the measure may even be filed. This naturally reduces the pool of qualified proponents and is a structural burden on placing an initiative on the local ballot. Nothing in *Chula Vista* addressed or authorized this type of restriction, and the Order's reliance on the case conflates unrelated doctrines.

The Second Amended Complaint already distinguished *Chula Vista*. Paragraphs 33 and 34 identify that the case concerned corporate control of initiatives and is inapplicable to burdens on natural persons, who could be qualified electors. Because the State never appeared, Plaintiff had no opportunity to brief these distinctions. The Order's conclusion that Plaintiff "did not meaningfully distinguish" *Chula Vista* is therefore unsupported by the record.

Because the Court relied heavily on *Chula Vista,* applying the wrong reasoning, the Order's reliance on it materially affected the burden analysis and warrants reconsideration.

## IV. The Order's Reliance on *Angle v. Miller* Is Misplaced and Rests on a Legal and Factual Misunderstanding

The Order states that Plaintiff "did not meaningfully distinguish *Angle v. Miller*." This conclusion is incorrect for two independent reasons: (1) the Court relied on the wrong *Angle* case—one Plaintiff never cited and had no opportunity to brief—and (2) the Ninth Circuit's 2012 *Angle* decision involves a fundamentally different type of election regulation, one that has no application to the five-resident gatekeeping barrier challenged here.

7

First, Plaintiff cited *People ex rel. Angle v. Miller*, 192 P.3d 1166 (Nev. 2008), a Nevada Supreme Court decision addressing constitutional procedures for state initiatives. The Court, however, relied on *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012)—a different case involving different facts and different legal issues. Because Defendant never appeared, Plaintiff had no opportunity to clarify this distinction or brief the inapplicability of the Ninth Circuit's *Angle* decision. Reconsideration is warranted for this reason alone.

Second, even assuming the 2012 *Angle* decision were the correct reference, it does not support the Order's analysis. It appears the Court relied on *Angle* for the proposition that grassroots proponents must demonstrate proof of public support before an initiative may advance. Respectfully, the Court misapplied that case. Angle involved a geographic distribution requirement for **statewide signature collection**, which applies only **after** a petition has been accepted for filing. The regulation in Angle governed *how many* signatures must be collected in different congressional districts, not *who* is permitted to initiate legislation.

Local initiatives in Nevada already have an analogous grassroots safeguard: petitions must gather signatures equal to 15% of the votes cast in the last general election. Plaintiff is **not** challenging that requirement. Instead, Plaintiff challenges a **pre-filing gatekeeping rule** that prevents circulation entirely unless five local sponsors publicly identify themselves. Because *Angle* addresses post-filing signature distribution—not a threshold barrier that stops a petition from being filed at all—the Court's reliance on Angle is inapplicable. The Order's reliance on Angle conflates two unrelated doctrines and sidesteps *Pierce's* command that courts evaluate whether a restriction significantly narrows "the pool of" initiative proponents. 44 F.4th at 864–66.

Third, the Order states that Plaintiff failed to distinguish *Angle*, but Plaintiff had no procedural opportunity to do so because the case was introduced sua sponte after briefing closed and after

8

Defendant defaulted. Given this posture, it was error to fault Plaintiff for not briefing an issue he was never permitted to address.

Because the 2012 Angle decision concerns a different statutory framework, different constitutional interests, and a different stage of the petition process, it does not control the burden analysis here. Its introduction into the Order—combined with the lack of notice or opportunity to respond—further supports reconsideration under Rule 60(b)(1) and 60(b)(6).

## V. The Court's Own Findings Underscore the Severity of the Burden

The Order characterizes the subject matter of Plaintiff's initiative as "taboo." That characterization, while not raised here for any improper inference, underscores a point relevant under *Meyer*, *Buckley*, *Nader*, and *Pierce*: when a measure involves stigmatized or controversial subject matter, the pool of individuals willing to publicly attach their names as official sponsors shrinks dramatically. This dynamic amplifies the structural burden imposed by a residency and numeric-based sponsorship rule. Because the restriction combines compelled public exposure with geographic residency limits, the resulting burden on political participation is greater than the burden in *Pierce*, where strict scrutiny was applied, even in the absence of supporting evidence.

## VI. Reconsideration Is Necessary to Correct Legal Error

Under *Pierce*, the five-resident rule should have been evaluated as a severe burden triggering strict scrutiny. Under *Meyer* and *Buckley*, restrictions that reduce the number of voices available to convey a message burden core political speech. Under *Nader*, residency requirements that shrink the pool of political participants are unconstitutional absent narrowly tailored justification—justification the State has not offered because it has not appeared.

Because the Order applied a burden-analysis standard that is inconsistent with controlling Ninth Circuit and Supreme Court precedent, relief under Rule 60(b) is warranted.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant relief under Rule 60(b), vacate the Order denying the preliminary injunction, and reconsider the motion under the correct legal standard set forth in *Pierce* and other binding authorities.

Should the Court determine that additional factual detail is required, Plaintiff is prepared to file a Third Amended Complaint. Plaintiff possesses documented evidence showing that, from 2022 through 2024, he made diligent and repeated efforts to recruit local residents willing to serve as official sponsors—efforts that were unsuccessful precisely because the challenged statutes deter participation in stigmatized initiatives. These facts, if pled, would further demonstrate that the five-resident requirement imposes a severe burden under *Pierce* and related precedent.

DATED: March 3rd, 2026

Respectfully submitted,

Russell Greer

/rgreer/

Pro Se Plaintiff